UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-2126(DSD/FLN)

Bel Canto Design, Ltd., a
Minnesota corporation,

        Plaintiff,

v.                                  **ORDER**

MSS HiFi, a New York corporation,
and John Boey a/k/a Johnny Boey,

        Defendants.

        Benjamin J. Court, Esq., John Harper III, Esq. and
Messerli & Kramer, P.A., 1400 Fifth Street Towers, 100
South Fifth Street, Minneapolis, MN 55402 and Mark A.
Larsen, Esq. and Larsen, Christensen & Rico, PLLC, 50
West Broadway, Suite 400, Salt Lake City, UT 84101,
counsel for plaintiff.

        Troy J. Hutchinson, Esq., Benjamin E. Gurstelle, Esq. and
Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200,
Minneapolis, MN 55402, counsel for defendants.

        This matter is before the court upon (1) the motion to dismiss
by defendants MSS HiFi, Inc. (MSS HiFi) and John Boey, (2) the
motion in limine by plaintiff Bel Canto Design, Ltd. (Bel Canto),
(3) the motion to strike and for sanctions by defendants, (4) the
motion for reconsideration by defendants, (5) the motion for a
preliminary injunction by Bel Canto, and (6) the motion for
expedited discovery by Bel Canto. On September 7, 2011, the court
heard oral argument. Based on a review of the file, record, and
proceedings herein, the motion to reconsider is denied; the motion

to dismiss is granted in part; the motion for a preliminary injunction is granted in part, in the form of an extension and modification of the temporary restraining order (TRO); and the motion to strike or for sanctions is denied. The court does not rule on the motion in limine or the motion for expedited discovery.

## BACKGROUND

The factual background of this matter is fully set forth in the August 25, 2011, order granting Bel Canto's motion for a TRO. See Order 1–6, ECF No. 37. Since entry of the TRO, defendants continue to advertise that Bel Canto will convert voltage from 120V/60Hz to 230V/50Hz for MSS HiFi customers. See McCormick Third Decl. Exs. 3–6. Defendants' website also states that "Bel Canto had to replace some of their products ... because many sources had found their power ratings to be overly aggressive and deceiving." Stronczer Decl. Exs. 1–2. Bel Canto moves for a preliminary injunction, admission of certain evidence and for expedited discovery. Defendants move to dismiss for lack of personal jurisdiction and improper venue, to strike the motion in limine and sanction Bel Canto, and for reconsideration.

**DISCUSSION**

## I.   Motion to Reconsider

Defendants move to reconsider what they call the court's disposition of their motion to dismiss. "Motions to reconsider are prohibited except by express permission" and a party seeking to make a motion to reconsider must request permission in writing. D. Minn. L.R. 7.1(h). Defendants did not do so. Further, the court's previous TRO order necessarily addressed the question of personal jurisdiction but did not dispose of the motion to dismiss, as the matter had not been fully briefed. Therefore, the motion to reconsider is denied.

## II.  Motion to Dismiss

The parties have now fully briefed the motion to dismiss, and the court determines that additional oral argument is not necessary pursuant to Rule 78(b).

### A.   Personal Jurisdiction

Defendants first argue that dismissal is proper for lack of personal jurisdiction. The existence of personal jurisdiction over defendants in Minnesota is a close question. However, for the reasons stated in the previous order, the court finds that Bel Canto has made a prima facie case that the exercise of personal

jurisdiction by this court is proper.   Order 6-9, ECF No. 37.
Therefore, dismissal for lack of personal jurisdiction is not
warranted.[1]

**B.    Venue**

Defendants next argue that venue in Minnesota is improper.
Venue is proper in:

> (1) a judicial district where any defendant
> resides, if all defendants reside in the same
> State, (2) a judicial district in which a
> substantial part of the events or omissions
> giving rise to the claim occurred, or a
> substantial part of property that is the
> subject of the action is situated, or (3) a
> judicial district in which any defendant may
> be found, if there is no district in which the
> action may otherwise be brought.

28. U.S.C. § 1391(b).   A corporation is deemed to reside in any
district in which it is subject to personal jurisdiction at the
time the action is commenced.   Id. § 1391(c).

Bel Canto argues that venue is proper in Minnesota under
subsection (b)(1) because defendants are subject to personal
jurisdiction in Minnesota.   Boey, however, does not reside in
Minnesota, and as a result venue is not proper under subsection
(b)(1).[2]   Bel Canto next argues that venue is proper in Minnesota

---

[1] If the court found jurisdiction lacking, it would transfer
this action to cure the defect.

[2] As a result, this case differs from Dakota Industries, Inc.
v. Dakota Sportswear, Inc., in which the only defendant was a
corporation subject to personal jurisdiction in the forum.   946
F.2d 1384, 1392 (8th Cir. 1991).

under subsection (b)(2) because the harm is felt by Bel Canto in Minnesota.  Where, as here, there is no evidence that infringing products were sold or altered in the forum, the original manufacture of goods and the existence of harm from a Lanham Act violation do not support venue.  See Woodke v. Dahm, 70 F.3d 983, 985-86 (8th Cir. 1995).[3]  Bel Canto alleges that defendants altered its products in New York and sold infringing products from New York.  As Bel Canto repeatedly states, "Mr. Boey and MSS HiFi in person ... committed acts outside Minnesota causing ... property damage in Minnesota."  See, e.g., Pl.'s Mem. Opp'n 8, ECF No. 44 (alteration in original) (internal quotation marks omitted).  Bel Canto's request to examine the product in New York highlights the fact that the events that constitute a violation of the Lanham Act, as well as the other allegedly defamatory and deceptive acts, all occurred in New York.  Bel Canto argues only that it felt harm to its reputation in Minnesota.  Without more, such harm is insufficient to support venue in this action.  See Woodke, 70 F.3d at 985-86.  As a result, a substantial part of the events in this

---

[3] Minnesota Mining & Manufacturing Co. v. Rauh Rubber, Inc., is inapposite, because the defendants sold infringing products in Minnesota.  See 943 F. Supp. 1117, 1125 (D. Minn. 1996).  For that same reason, American Association for Justice v. The American Trial Lawyers Association, Inc., also differs.  See No. 07-4626, 2008 WL 2690290, at *7 (D. Minn. July 1, 2008) (finding venue proper where defendants sent up to 100 infringing letters and follow-up membership materials to Minnesota residents).  The record in the present case contains no facts showing that defendants sold or sent infringing materials into Minnesota; no Lanham act violation occurred in Minnesota.

action did not occur in Minnesota, and venue is improper.[4] Moreover, retaining the action in Minnesota only creates procedural uncertainty and delays resolution of the merits of the action.  In contrast, a substantial part — if not all — of the relevant events occurred in New York, where venue and personal jurisdiction are unquestioned.

Having determined that venue is improper in this district, the court must "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Defendants' alleged acts and apparent disregard of this court's order suggest that ongoing judicial supervision of defendants will be required.  Moreover, the trademark claims of plaintiffs and antitrust counterclaims of defendants appear to have merit.  Therefore, it is in the interest of justice to transfer this action.

## III.  Preliminary Injunction

Because the court will transfer this case, the transferee court is the proper forum to decide whether to issue a preliminary injunction.  However, there is a need to maintain the status quo while the action moves to New York.  Therefore, the court considers whether to extend the TRO to preserve the status quo during transfer.

---

[4] The court notes that even if venue were proper in Minnesota, it would transfer the action to New York under 28 U.S.C. § 1404(a).

6

**A.   Minnesota Franchise Act**

As an initial matter, defendants argue that the court cannot grant injunctive relief because they remain an authorized dealer of Bel Canto products.   Specifically, defendants argue that the Minnesota Franchise Act, Minn. Stat. § 80C.01, applies to the dealer agreement.   A minimum purchase agreement may create a franchisor/franchisee relationship when dealers are "required to purchase amounts or items that they would not purchase otherwise." Twin Cities Galleries, LLC v. Media Arts Group, Inc., 476 F.3d 598, 601 (8th Cir. 2007) (quoting Upper Midwest Sales Co. v. Ecolab, Inc., 577 N.W.2d 236, 242 (Minn. Ct. App. 1988)).   Defendants provide only conclusory statements in support of this argument. Defendants do not provide a copy of an authorized dealer agreement between Bel Canto and MSS HiFi. See Boey Decl. Ex. 1, ECF No. 58-1 (agreement between Mt. Washington Valley Audiophile, Inc. and Bel Canto).   Defendants offer no evidence that Bel Canto forced them to make unwanted purchases.   Instead, defendants provide a self-serving declaration reciting the legal standard. See id. ¶ 3 ("MSS was also required to purchase items it would not have purchased otherwise.").   Moreover, defendants do not show that the alleged minimum-purchase requirement was objectively unreasonable.   See Twin Cities Galleries, 476 F.3d 601. As a result, defendants fail

7

to show that the agreement between Bel Canto and defendants was a franchise agreement pursuant to the Minnesota Franchise Act. Therefore, defendants' argument fails.

### B. **Dataphase** Factors

Since the court first granted a TRO, defendants disregarded this court's restraining order by continuing to post disparaging comments about Bel Canto products. Defendants also continue to suggest that Bel Canto will alter product voltage for MSS HiFi customers. In possible mitigation, defendants have raised serious, credible allegations of Sherman Act violations. As a result, the court again considers the Dataphase factors in deciding whether to extend the TRO.

A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety. See Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether to extend a TRO: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. See Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

### 1.   Irreparable Harm

Bel Canto argues that defendants' sale of Bel Canto products with counterfeit serial numbers, false claims about being an exclusive online distributor and claims about the value of Bel Canto products damage its goodwill. Defendants deny the allegations. Bel Canto, however, presented evidence that MSS HiFi sold and offered for sale products with counterfeit serial numbers.[5] Moreover, defendants do not deny making the false representations about Bel Canto on the MSS HiFi website.

To show irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "[P]otential loss of goodwill qualifies as irreparable harm." Id. at 426. Based on defendants' false representations and false claims, the court finds that Bel Canto has demonstrated that it is likely to suffer irreparable harm to its goodwill without equitable relief. Moreover, harm is presumed when misrepresentations have a tendency to deceive under § 43 of the Lanham Act. See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980).

---

[5] The first-sales doctrine does not apply to altered products. See Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1073-74 (10th Cir. 2009); see also Champion Spark Plug Co. v. Reich, 121 F.769, 773 (8th Cir. 1941).

Since the TRO issued, defendants willfully disregarded this court's restraining order by continuing to post disparaging comments about Bel Canto products and suggesting that Bel Canto will alter product voltage for MSS HiFi customers.  These acts cause additional harm to Bel Canto.  Therefore, this factor weighs even more strongly in favor of Bel Canto than when the court first considered the TRO.

### 2.    Balance of Harms

The court has already determined that Bel Canto's reputation and goodwill are harmed by defendants' claims and sale of altered Bel Canto products.  On the eve of the first TRO hearing, defendants removed the false statements from their website. Defendants also claim that they do not sell Bel Canto products with altered serial numbers.  The evidence suggests otherwise.  But if true, injunctive relief will cause little if any harm to defendants.  Posting a statement informing consumers that products purchased from MSS HiFi do not bear support by Bel Canto merely gives consumers information, and cannot be construed as a harm to defendants.[6]  Therefore, this factor weighs in favor of Bel Canto.

---

[6] To the extent that this statement is incorrect or that Bel Canto is engaging in an unlawful restraint of trade by such statement, defendants will have legal recourse against Bel Canto in the form of antitrust claims.

10

### 3.   Likelihood of Success on the Merits

The court next considers the "most significant" <u>Dataphase</u> factor: likelihood that the movant will prevail on the merits. <u>S & M Constructors, Inc. v. Foley Co.</u>, 959 F.2d 97, 98 (8th Cir. 1992).  The Lanham Act makes unlawful the unauthorized:

> use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.  The Lanham Act further imposes civil liability when a person uses:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

<u>Id.</u> § 1125(a).

In this case the evidence of false statements and altered serial numbers offered by plaintiffs suggests that they are very likely to prevail on the merits of their Lanham Act and deceptive

11

trade claims.[7]  Defendants raise serious allegations of per se antitrust violations by Bel Canto.  Those claims are not presently before the court, and defendants' likelihood of success under the Sherman Act does not mitigate Lanham Act violations.  Therefore, this factor weighs in favor of Bel Canto.

### 4.   Public Interest

The public interest favors protecting trademarks and tradenames and preventing misrepresentations to consumers.  There also is a public interest in unrestrained competition.  Here, however, it appears that defendants are engaged in deceptive and unfair competition.  Therefore, the public interest factor is neutral or favors Bel Canto.  Accordingly, based upon a balancing of the four <u>Dataphase</u> factors, extension of the TRO is warranted.

## IV.  Remaining Motions

### A.   Motion in Limine

Bel Canto moves to admit evidence of Boey's criminal conviction and bad reputation in the audio community.  Bel Canto acknowledges that such evidentiary motions in limine are properly made shortly before trial, and cite a 2007 how-to article from a legal trade journal as authority to bring this motion before defendants have even answered the complaint.  Pl.'s Mem. Opp'n Ex.

---

[7] By listing these claims, the court offers no opinion on the merits of the other claims, but merely notes that plaintiffs are likely to succeed on several claims.  <u>Cf.</u> <u>United Healthcare Ins. Co. v. AdvancePCS</u>, 316 F.3d 737, 742–43 (8th Cir. 2002).

12

1, ECF No. 54-1.   Magazine articles are neither binding nor persuasive legal authority in this court.   This motion is premature, and therefore, the court will not address the motion.

**B.   Motion to Strike and for Sanctions**

Defendants move to strike the motion in limine and for sanctions.   The court has already determined that no action is warranted regarding the motion in limine.   As to sanctions, defendants filed the motion without giving Bel Canto 21 days to respond under the safe-harbor provisions of Rule 11.   <u>See</u> Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and ... must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service [on the nonmoving party].").   Further, the proffered evidence of Boey's 2006 criminal conviction and reputation via online message boards is public information.   Therefore, the motion to strike and for sanctions is denied.

**C.   Motion for Expedited Discovery**

Bel Canto moves for limited discovery of the serial numbers of Bel Canto products that defendants' advertise for sale.   At oral argument, defendants indicated that they do not oppose inspection of the external serial numbers, but stated that they oppose allowing Bel Canto to open the products to view the internal serial numbers.   Defendants argue that Bel Canto seeks internal serial

numbers only to further an alleged group boycott against defendants. However, if defendants have not altered the external serial numbers, then allowing inspection of internal numbers gives Bel Canto no additional information in furtherance of a boycott. The record contains evidence that defendants have sold Bel Canto products with altered external serial numbers. As a result, it appears that allowing inspection of both the external and internal surfaces of defendants' Bel Canto products is warranted. Such discovery is relevant, not unduly burdensome and will preserve evidence. In light of the court's decision to transfer this action, the court withholds ruling on this motion to allow the transferee court to dispose the motion.

## CONCLUSION

Accordingly, based on the above and in accordance with the previous order of the court, **IT IS HEREBY ORDERED** that:

1.   The motion for a preliminary injunction [Doc. No. 38] is granted in part, in the form of an extension of the TRO:

> a.   John Boey and MSS HiFi and its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them, are hereby restrained from:
>
> > i.   Selling any Bel Canto products with false, altered or counterfeit serial numbers, including

but not limited to the following Bel Canto products:

      DAC 3.5VB Serial No. D35-135

      VBS-1 Serial No. VBS-118

      DAC 3.5VB Serial No. D35-135

      VBS-1 Serial No. VBS-118

      DAC 3.5VB Serial No. D35-139

      REF500m monoblock amplifier Serial Nos. R5M-262 & R5M-263

      C5i Serial No. C51-112

      LNS1 Serial No. LNS-149

      VBS-1 Serial No. VBS-152

      DAC 1.5 Serial No. D15-220

      DAC 2.5 Serial No. D25-156

      REF1000m, Serial Nos. R1M-127 & R1M-128;

ii. Claiming any affiliation with Bel Canto, including specifically that its national sales manager, P.J. Zornosa, will be attending any MSS HiFi sponsored events;

iii. Defaming, diluting, or causing confusion with respect to Bel Canto or its trademarks in the sale of goods or services in commerce in any way;

b. The following language shall appear in association with any advertisement, solicitation or sale of any and all new Bel Canto products by defendants:

15

> MSS HiFi IS NOT AN AUTHORIZED BEL
> CANTO DESIGN DEALER. ANY BEL CANTO
> DESIGN PRODUCTS PURCHASED FROM MSS
> HiFi DO NOT HAVE A MANUFACTURER's
> WARRANTY, and WILL NOT BE ELIGIBLE
> FOR (i) SERVICE FROM BEL CANTO
> DESIGN, (ii) SOFTWARE or HARDWARE
> UPGRADES, (iii) REBATES, or (iv) ANY
> RECALL OR OTHER NOTICES;

c.   Bel Canto shall provide security to defendants in the form of the $5,000 bond presently on file with the Clerk of Court [Doc. No. 45];

d.   This TRO shall remain in effect for 14 days or as ordered by the transferee court.

2.   The motion to strike and for sanctions [Doc. No. 31] is denied;

3.   The motion to reconsider [Doc. No. 40] is denied;

4.   The motion to dismiss for lack of jurisdiction or improper venue [Doc. No. 14] is granted in part; and

5.   This action is transferred to the United States District Court for the Southern District of New York.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 12, 2011

                    s/David S. Doty
                    David S. Doty, Judge
                    United States District Court